UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTIO LOPEZ,

   Plaintiff,            Hon. Ellen S. Carmody

v.

                    Case No. 1:13-cv-540

COMMISSIONER OF
SOCIAL SECURITY,

   Defendant.
_____/

**OPINION**

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On August 8, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #13).

   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 20 years of age on his alleged disability onset date.  (Tr. 170).  He successfully completed high school and previously worked as a car detailer, fast food worker, and cook helper.  (Tr. 30).  Plaintiff applied for benefits on July 28, 2009, alleging that he had been disabled since February 15, 2009, due to attention deficit hyperactivity disorder (ADHD), bi-polar disorder, post-traumatic stress disorder (PTSD), and back impairments.  (Tr. 170-77, 185).  Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 94-169).  On July 11, 2011, Plaintiff appeared before ALJ David Engel.  (Tr. 45-93).  In a written decision dated August 4, 2011, the ALJ determined that Plaintiff was not disabled.  (Tr. 19-32).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-5).  Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On December 17, 1996, Plaintiff was examined by Joseph Kaliowski, Ph.D. (Tr. 284-89).  Plaintiff participated in the Wechsler Intelligence Scale for Children, the results of which

revealed that Plaintiff's "general cognitive ability is within the low average range of intellectual functioning." (Tr. 285). The doctor also noted that Plaintiff's "reading skills are not considered weak when viewed in relation to his level of ability." (Tr. 287). Plaintiff also participated in a Continuous Performance Test the results of which indicated "inattentiveness" and "poor attention to the task." (Tr. 287). Plaintiff was diagnosed with attention deficit disorder with hyperactivity and oppositional defiant disorder. (Tr. 288). The doctor concluded that Plaintiff "needs to receive more structure in the home" and "needs a structured behavior management program in the classroom." (Tr. 289).

On May 21, 2008, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 307-09). Plaintiff reported that he was experiencing back pain. (Tr. 307). Plaintiff reported however that "he is able to bench press 300 lbs and do difficult diamond push up[s]." (Tr. 307). Plaintiff rated his back pain as "4/10." (Tr. 308). The results of a physical examination were unremarkable and the doctor concluded that Plaintiff "is able to do all the orthopedic maneuvers on the disability questionnaire without assistance of modification." (Tr. 308-09). X-rays of Plaintiff's lumbosacral spine were "unremarkable." (Tr. 310).

On August 16, 2009, Plaintiff's grandmother completed a report regarding Plaintiff's activities. (Tr. 196-203). Plaintiff's grandmother reported that on a typical day Plaintiff prepares meals, rides his bike, looks for a job, uses the internet, plays his keyboard and writes music, and "works out." (Tr. 196). Plaintiff's grandmother further reported that Plaintiff washes laundry, makes beds, washes dishes, vacuums, and shops for food. (Tr. 198-99). Plaintiff's grandmother reported that Plaintiff enjoys working out, playing and writing music, watching television, playing ball, swimming, and visiting with friends. (Tr. 200). On September 9, 2009, Plaintiff's mother

completed an identical questionnaire providing similar responses. (Tr. 204-11). The record also contains an undated function report completed by Plaintiff. (Tr. 212-19). In this report, Plaintiff reported that on a typical day he watches television, plays pool, plays music, works out, and plays video games. (Tr. 212). Plaintiff also reported that he prepares meals, cleans, washes laundry, and shops for food. (Tr. 214-15).

On October 1, 2009, Plaintiff participated in a consultive examination conducted by Steve Geiger, Ph.D. (Tr. 311-16). When asked why he was unable to work, Plaintiff responded, "I don't get along with others, I go off on people, I yell and cuss." (Tr. 311). Plaintiff also reported experiencing "depression [which] comes and goes" as well as "problems with fatigue and concentration." (Tr. 311). Plaintiff reported that he had attempted suicide 10 times in the past, the last attempt being approximately three years previous. (Tr. 312). Specifically Plaintiff reported that he has "cut his wrists, tak[en] overdoses and hung himself." (Tr. 312). Plaintiff, however, "denied seeking any medical treatment after his suicide attempts." (Tr. 312). Plaintiff also reported consuming large amounts of alcohol as well as using marijuana and cocaine. (Tr. 312). Plaintiff reported that his depression was "a 4 on a 0-10 scale." (Tr. 314). Plaintiff also reported that "his levels of anxiety and anger were a 0." (Tr. 314). The results of a mental status examination were unremarkable. (Tr. 314-15). Plaintiff was diagnosed with alcohol dependence, mood disorder, cannabis dependence and cocaine dependence. (Tr. 315).

On November 9, 2009, Plaintiff was examined by Dr. Thomas Keaveney. (Tr. 317-19). Plaintiff reported that "his main physical disability is related to problems with [his] lower back pain." (Tr. 317). Plaintiff reported, however, that "he has not had a recent evaluation and treatment for his back pain." (Tr. 317). The results of a physical examination were unremarkable. (Tr. 318-

19). The doctor concluded as follows:

> On exam, he does not have tenderness in the lower lumbar region. He has normal range of motion and I do not find any evidence of radiculopathy. He does have some evidence of pes planus,[1] which may be causing some biomechanical lower back pain and would suggest further evaluation with physical therapy and possibly orthotics if deemed necessary.

(Tr. 319).

At the administrative hearing, Plaintiff testified that he "occasionally" drinks alcohol. (Tr. 55). With respect to his marijuana use, Plaintiff reported that he recently discontinued such, but only because he had a falling out with the people that supplied him. (Tr. 55-56). Plaintiff reported that he was presently working at Denny's approximately 30 hours per week. (Tr. 56-57). Plaintiff reported that he experienced no difficulty taking care of his personal needs. (Tr. 59). Plaintiff reported that he watches "a lot of" television, but no longer plays the keyboard. (Tr. 60). Plaintiff reported that he was taking medication to treat his depression. (Tr. 61).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[1] Pes planus refers to flatfeet, "a condition is which the longitudinal arch in the foot, which runs lengthwise along the sole of the foot, has not developed normally and is lowered or flattened out." *See* Flatfoot (Pes Planus), available at http://www.webmd.com/a-to-z-guides/flatfoot-pes-planus-topic-overview (last visited on June 2, 2014).

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No.

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) attention deficit disorder, (2) bipolar disorder, and (3) back problems and allied disorders, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-23). With respect to Plaintiff's residual functional capacity, the ALJ

---

4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

determined that Plaintiff retained the capacity to perform medium work subject to the following limitations: (1) he cannot climb ladders, ropes, or scaffolds; (2) he cannot work in environments with unprotected heights or dangerous machinery; (3) he can understand, remember, and carry out simple instructions in a work setting; (4) he is able to interact with co-workers and supervisors, under routine supervision; and (5) he can maintain no more than occasional interaction with the public, whether in person or on the telephone.  (Tr. 23-24).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.  Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in Social Security Region #5[3] approximately 75,525 jobs, and more than 1.5 million jobs nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 86-92).  This represents a

---

[3] Social Security Region #5 consists of Minnesota, Michigan, Illinois, Ohio, Indiana, and Wisconsin.  (Tr. 88).

8

significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **Plaintiff does not Suffer from a Listed Impairment**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that his impairments satisfy the requirements of Section 12.02 of the Listings regarding Organic Mental Disorders. Specifically, this particular Listing addresses "psychological or behavioral abnormalities associated with a dysfunction of the brain." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.02. To satisfy the requirements of this Listing, Plaintiff must demonstrate that he suffers from a "specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." *Id.* The record contains no evidence that Plaintiff suffers from any brain dysfunction or loss of previously acquired functional abilities. Plaintiff has likewise failed to demonstrate that his condition satisfies the various other requirements detailed in this Listing. Substantial evidence supports the ALJ's decision that Plaintiff's impairments neither satisfy, nor medically equal, this (or any other) Listing.

**II.         The ALJ Properly Discounted Plaintiff's Subjective Allegations**

Plaintiff next argues that he is entitled to relief because the ALJ improperly rejected his subjective allegations that his emotional impairments prevent him from performing substantial gainful activity.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

10

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2013 WL 5496007 at *3 (6th Cir., Oct. 4, 2013) (citation omitted).

In assessing Plaintiff's credibility, the ALJ discussed at length the meager evidence of record. (Tr. 24-29). Specifically, the ALJ observed that Plaintiff's "statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between [Plaintiff's] alleged symptoms, and objective documentation in the file." (Tr. 28). As the ALJ found, Plaintiff's subjective allegations are inconsistent with the medical record and the extensive nature of Plaintiff's reported activities.

(Tr. 28-29). The ALJ further found, Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual, and the treatment [Plaintiff] has received for the allegedly disabling impairments has been essentially routine and conservative in nature." (Tr. 29). In sum, the ALJ's decision to discredit Plaintiff's subjective allegations complies with the aforementioned legal standard and is supported by substantial evidence.

### III.       The ALJ Properly Evaluated the Medical Evidence

Plaintiff next asserts that he is entitled to relief because the ALJ failed to properly evaluate the opinions of his care providers. Specifically, Plaintiff asserts that the ALJ failed to afford "appropriate weight" to the following items: (1) that Plaintiff was once diagnosed with oppositional defiant disorder; (2) that Plaintiff was once diagnosed with depression; (3) that Dr. Geiger observed that Plaintiff "would have difficulty consistently working in a competitive job environment at this time; and (4) Dr. Geiger's conclusion that Plaintiff's prognosis was "poor."

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based

upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion,

13

(4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The fact that Plaintiff was diagnosed with oppositional defiant disorder and depression is simply not a medical opinion to which the ALJ must defer. It is well understood that the mere diagnosis of a condition or impairment sheds no light on the extent to which such limits the individual in question. *See, e.g., Hill v. Commissioner of Social Security*, - - - Fed. Appx. - - -, 2014 WL 1257948 at *4 (6th Cir., Mar. 27, 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it").

Plaintiff's argument regarding Dr. Geiger's comments that Plaintiff "would have difficulty consistently working in a competitive job environment at this time" and that Plaintiff's prognosis was "poor" is no more availing. First, these particular statements are vague, qualified, and fail to indicate any specific functional limitations from which Plaintiff allegedly suffered. In this respect, the ALJ's RFC determination is simply not inconsistent with these statements. Furthermore, as previously noted, Plaintiff reported to Dr. Geiger that he consumed large amounts of alcohol and, moreover, used marijuana and cocaine. Not surprisingly, Dr. Geiger, in addition to diagnosing Plaintiff with mood disorder, diagnosed Plaintiff with alcohol dependence, cannabis dependence, and cocaine dependence. A review of Dr. Geiger's report reveals that his reservations concerning Plaintiff's prognosis and ability to work concern Plaintiff's substance abuse - not his alleged emotional impairments. Accordingly, this argument is rejected.

**IV.         The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff asserts two arguments related to the determination of his residual functional capacity. First, Plaintiff asserts that he is entitled to relief because he is "disabled and unable to perform the basic mental demands of any level of work." Second, Plaintiff argues that the ALJ improperly disregarded his GAF score.

As discussed above, Plaintiff's treatment history, as well as his extensive level of activities, squarely contradicts any claim that Plaintiff is "unable to perform the basic mental demands of any level of work." While Dr. Geiger assessed Plaintiff's GAF score as 50,[4] such hardly qualifies Plaintiff for benefits or calls into question the ALJ's decision. As the Sixth Circuit has recognized, a GAF score "may help an ALJ assess mental RFC, but it is not raw medical data." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 503 n.7 (6th Cir., Feb. 9, 2006). Accordingly, the ALJ is not required "to put stock in a GAF score in the first place." *Id.* at 511 (citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002)). Even if the Court assumes that this particular GAF score accurately reflected Plaintiff's then condition, as previously noted, it is just as likely that such was a reflection of Plaintiff's extensive substance abuse than a disabling emotional impairment. Accordingly, these arguments are rejected.

---

[4] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  June 9, 2014                           /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge